## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL ROSENFIELD,

      Plaintiff,

      v.

THOMAS P. FRANK, et al.,

      Defendants.

CIVIL ACTION NO. 4:18-cv-00568

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This is a diversity action brought by Daniel Rosenfield, a citizen of New York, against Thomas P. Frank, a citizen of Pennsylvania, and Numiscent, LLC, a Pennsylvania limited liability company.[1] Over the course of several years, Rosenfield entered into a series of transactions with the defendants in which he purchased more than sixty "Lincoln" pennies minted between 1909 and 1931. Rosenfield allegedly did so with the understanding that these were "rare, high-end, uncirculated, full 'red' Lincoln pennies." He now brings this action for damages, alleging that, based on the analysis by professional grading services, forty-six of the coins are actually worthless because they had been altered or improperly

---

[1] None of the members of Numiscent is a citizen of New York.

cleaned prior to his acquisition of them. He asserts state law claims for negligent misrepresentation, fraud, and unfair trade practices. For relief, he seeks more than $200,000 in compensatory damages, plus punitive damages, treble damages under the state unfair trade practices statutes, interest, costs, and attorney fees.

The defendants have answered the complaint and raised a counterclaim against the plaintiff, asserting a state law claim for abuse of process. For relief, the defendants seek unspecified damages, costs, and attorney fees. The plaintiff has filed an answer to the counterclaim.

The defendants have filed a motion for judgment on the pleadings under Rule 12(c), which is fully briefed and ripe for disposition.[2] (Doc. 16; *see also* Doc. 21; Doc. 22; Doc. 23.) For the reasons set forth below, the defendants' motion will be granted in part and denied in part, and the

---

[2] The defendants' motion papers characterize the motion as one to dismiss for failure to state a claim under *both* Rule 12(b)(6) *and* Rule 12(c) of the Federal Rules of Civil Procedure. But under the federal rules, a Rule 12(b)(6) motion must be filed before—or contemporaneously with—the answer, whereas a Rule 12(c) motion may be filed at any time after the pleadings are closed. *See* Fed. R. Civ. P. 12(b), (c), (g)(2), (h)(2); *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D. Pa. 1990). Thus, we have treated the defendants' motion solely as a Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted. *See Scheetz*, 130 F.R.D. at 36.

complaint will be dismissed, with leave to amend.

## I. BACKGROUND

The plaintiff, Daniel Rosenfield, is a collector of valuable, high-end, uncirculated United States "Lincoln" pennies, minted between 1909 and 1931. In particular, he collected Lincoln pennies with a "red" color designation (commonly denoted in records as "RD"), which are significantly more valuable than Lincoln pennies with a "red brown" color designation (commonly denoted as "RB").

Over the course of several years,[3] Rosenfield entered into a series of transactions[4] with the defendants—Thomas P. Frank and Numiscent, LLC—and acquired at least 66 Lincoln pennies[5] from the defendants for a total purchase price of $244,111. Rosenfield alleges that, at all times, he made it clear and expressed that he was only interested in buying the

---

[3] The plaintiff alleges that his series of transactions with the defendants began in June 2010. The defendants allege that it began as early as February 2008. From the pleadings, it appears that the last disputed transaction took place in late 2014. The parties' last transaction overall appears to have occurred in February 2015, but that coin is not among those alleged to be altered or defective.

[4] The defendants allege as many as 49 separate transactions.

[5] The defendants allege that Rosenfield purchased 67 such coins. Although the pleadings are less than clear on this point, they suggest that the defendants are alleging a single additional coin purchase that occurred in 2008 via the eBay auction website.

rare, high-end, uncirculated full "red" or "RD" Lincoln pennies. He further alleges that, at all times, defendant Frank expressly represented to him that the defendants were only selling him rare, high-end, uncirculated, full "red" or "RD" Lincoln pennies. Specifically, Rosenfield alleges that Frank made multiple express representations by email claiming that these coins were in fact rare, valuable, uncirculated, full "red" or "RD" or "gem red" Lincoln pennies.[6] Rosefield alleges that these representations were a critical factor in his valuation of these coins, that the representations were intended to induce him to purchase the coins, and that they did in fact induce him to purchase the coins in justifiable reliance on Frank's representations.

In 2016, following a cancer diagnosis, the plaintiff decided to have his Lincoln penny collection professionally graded. He sent an initial batch of eight coins to a nationally renowned vendor, Professional Coin Grading Service ("PCGS"). On March 28, 2016, PCGS reported back to Rosenfield that three of the eight coins could not be graded due to

---

[6] The complaint alleges that the full set of emails is "too voluminous to quote or attach" in full. Instead, the complaint includes a table containing a representative sample of quoted representations from those emails.

"questionable color"—that is, their color was not the genuine, original color of the coins because they had been acid washed, chemically altered, polished, improperly cleaned, or doctored in some way to make them appear (falsely) to be full "red" Lincoln pennies. Surprised by this report, Rosenfield then sent 53 more coins to PCGS for evaluation. Out of a total of 61 coins evaluated, PCGS determined that 46 coins could not be graded because they had "questionable color," meaning they had been altered or improperly cleaned. Rosenfield requested that PCGS re-evaluate these claims, but the results were the same.

Rosenfield sought a second opinion, sending 15 of the coins to be retested by another nationally renowned vendor, Numismatic Guaranty Corporation ("NGC"). Upon evaluation, NGC determined that all 15 of the coins submitted were either "improperly cleaned" or had "altered color."

Rosenfield alleges that he paid the defendants $217,181 for the 46 ungradable coins, but these 46 coins are actually worthless.

In his complaint, Rosenfield asserts three alternative state law causes of action. In Count I, he asserts a common law tort claim of negligent misrepresentation, seeking compensatory damages of $217,181

plus interest and costs of suit. In Count II, he asserts a common law tort claim of fraud, seeking compensatory damages of $217,181 plus punitive damages, attorney fees, interest, and costs of suit. In Count III, he asserts a statutory claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*, seeking compensatory damages of $217,181 plus treble damages, attorney fees, interest, and costs of suit.

In answering the complaint, the defendants have raised a counterclaim, asserting a common law tort claim of abuse of process, seeking unliquidated compensatory damages, plus punitive damages, attorney fees, and costs of suit.

The defendants have filed a motion for judgment on the pleadings, together with a brief in support, seeking dismissal of the plaintiff's negligent misrepresentation, fraud, and unfair trade practices claims, and judgment in favor of the defendants on their abuse of process counterclaim. The plaintiff has filed a brief in opposition, but he has not moved for dismissal of the defendants' counterclaim. The defendants have filed a reply brief.

## II. LEGAL STANDARD

The defendant has answered the complaint and moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Under Rule 12(c), a court must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party." *U.S. Fid. & Guar. Co. v. Tierney Assoc., Inc.*, 213 F. Supp. 2d 468, 469 (M.D. Pa. 2002) (citing *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)); *see also Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 163 (M.D. Pa. 2007) ("When deciding a motion for judgment on the pleadings, the court is directed to view 'the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party.'") (quoting *Hayes v. Cmty. Gen. Osteopathic Hosp.*, 940 F.2d 54, 56 (3d Cir. 1991)). In deciding a Rule 12(c) motion, we may also consider "matters of public record, and authentic documents upon which the complaint is based if attached to the complaint or as an exhibit to the motion." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 496–97 (E.D. Pa. 2005);

*see also Kilvitis v. Cty. of Luzerne*, 52 F. Supp. 2d 403, 406 (M.D. Pa. 1999) ("In deciding a Rule 12(c) motion, however, a court may take judicial notice of any matter of public record."). Ultimately, "[a] party moving for judgment on the pleadings under Rule 12(c) must demonstrate that there are no disputed material facts and that judgment should be entered as a matter of law." *U.S. Fid. & Guar.*, 213 F. Supp. 2d at 469–70 (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988), and *Inst. for Sci. Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991)).

## III. DISCUSSION

### A. Statute of Limitations

The defendants have interposed a statute of limitations defense with respect to the first two counts of the complaint—negligent misrepresentation and fraud. Both of these common law tort claims are subject to a two-year statute of limitations.[7] 42 Pa. Cons. Stat. § 5524(7).

"A party may raise a statute of limitations defense in a Rule 12(c) motion if its application is apparent on the face of the complaint." *United*

---

[7] The plaintiff's third claim, under the Pennsylvania UTLCPL, is governed by a six-year statute of limitations. *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 n.9 (Pa. Super. Ct. 1999).

*States v. Cephalon, Inc.*, 159 F. Supp. 3d 550, 558 n.7 (E.D. Pa. 2016).

> Federal Rule of Civil Procedure 8 does not require that a complaint anticipate or overcome affirmative defenses such as the untimeliness of a claim; thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. Consistent with this rule, a defendant may raise the statute of limitations as a defense in a Rule 12(b)(6) motion only if it is apparent on the face of the complaint that the claims are not time-barred. If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6). Federal courts have applied this same rule in the context of a motion for judgment on the pleadings.

*Germinaro v. Fid. Nat'l Title Ins. Co.*, 107 F. Supp. 3d 439, 449 (W.D. Pa. 2015) (cleaned up)[8] (citing and quoting *Schmidt v. Skolas*, 770 F.3d 241, 248–49 (3d Cir. 2014)).

The plaintiff's claims concern a series of transactions, the latest of

---

[8] *See Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 540 & n.1 (E.D. Pa. 2018) ("This opinion uses (cleaned up) to indicate that extraneous, non-substantive information—such as internal quotation marks, alterations, and citations—has been omitted from quotation."); *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 379 & n.1 (E.D. Pa. 2018) ("'Cleaned up' is a new parenthetical used to eliminate unnecessary explanation of non-substantive prior alterations."); *see, e.g.*, *In re Diet Drugs Prod. Liability Litig.*, 763 Fed. App'x 237, 2019 WL 494588, at *4 n.22 (3d Cir. Feb. 8, 2019); *Martinez v. Attorney Gen. U.S.*, 761 Fed. App'x 133, 136 (3d Cir. 2019); *Alarm.com, Inc. v. SecureNet Tech. LLC*, 345 F. Supp. 3d 544, 548, 554 (D. Del. 2018).

which was completed in late 2014, well more than two years before the commencement of this action on March 9, 2018. "As a general rule in Pennsylvania, 'the statute of limitations begins to run as soon as the right to institute and maintain a suit arises,' (i.e., upon the occurrence of the alleged breach of duty)." *Downey v. First Indem. Ins.*, 214 F. Supp. 3d 414, 429 (E.D. Pa. 2016). "Mistake, misunderstanding, or lack of knowledge do not toll the running of the statute." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). But "[t]here are exceptions that act to toll the running of a statute of limitations. The discovery rule and the doctrine of fraudulent concealment are such exceptions." *Id.* at 858. Here, the plaintiff contends that both of these exceptions apply.

Under Pennsylvania law, the discovery rule applies to "situations in which a party, through no fault of his or her own, does not discover her injury until after the statute of limitations normally would have run." *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003). "Where the discovery rule does apply, a limitations period begins to run where the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause." *Downey*, 214 F. Supp. 3d at 429 (brackets omitted). "[I]n this context, reasonable diligence is not an

absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Fine*, 870 A.2d at 858. "[T]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000). "While reasonable diligence is an objective test, it is sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Fine*, 870 A.2d at 858 (cleaned up).

"[W]hen a court is presented with the assertion of the discovery rules application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause." *Id.* "The point of time at which the injured party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury. Only where the facts are so clear that reasonable minds could not differ may the commencement of the limitation period be determined as a matter of law." *Downey*, 214 F. Supp.

3d at 429 (cleaned up); *accord Debiec*, 352 F.3d at 129; *Pickett v. Am. Ordnance Pres. Ass'n*, 60 F. Supp. 2d 450, 454 (E.D. Pa. 1999); *Fine*, 870 A.2d at 858–59; *Kingston Coal Co. v. Felton Mining Co., Inc.*, 690 A.2d 284, 288 (Pa. Super. Ct. 1997).

In addition to the discovery rule, the doctrine of fraudulent concealment may also serve to toll the running of the statute of limitations.

> . . . The doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence. While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made.

> . . . .

> . . . [T]he standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment. This is . . . the standard that will serve one of the overarching tenets in this area of our jurisprudence—the responsibility of a party who seeks

to assert a cause of action against another to be reasonably diligent in informing himself of the facts upon which his recovery may be based. Moreover, because the doctrine captures even unintentional conduct on a defendant[']s part and the standard of reasonable diligence requires from a party only that knowledge which is reasonably attained under the circumstances, we do not believe that deviation from that standard to a higher threshold of knowledge is warranted. Thus, . . . a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause.

*Fine*, 870 A.2d at 270–72 (citations omitted).

Here, Rosenfield has alleged that Frank repeatedly made express representations to him that the coins being sold were rare, valuable, uncirculated, full "red" or "RD" or "gem red" Lincoln pennies. The complaint includes a table setting forth Frank's representations with respect to particular coins, later determined to be of nominal value only. For example, Frank made the following representations with respect to the nature and condition of one "1918-S" Lincoln penny: (a) "I don't know if I've ever had one this nice in my 15 years."; (b) "So you have a gem, and now I present you the 'super' gem."; (c) "It is amazingly mark-free and very bright, lustrous red."; and (d) "I ask that you please trust me that this coin is superb and receives my highest recommendation." (Doc. 1

¶ 18.) Rosenfield has alleged that, in justifiable reliance on these and other representations, he paid the defendants $9,700 for that coin, which was ultimately found to be worthless because it had been acid washed, chemically altered, polished, improperly cleaned, or doctored in some way to make it appear to be a full "red" Lincoln penny.

In 2016, due to a cancer diagnosis, Rosenfield sought to have his Lincoln penny collection professionally graded. On March 28, 2016—years after the various coin purchases, but less than two years before the commencement of this action—he received the first report by a professional grading service stating that some of his coins could not be graded because they had "questionable color"—a color that was not the genuine, original color of the coins, suggesting that they had been acid washed, chemically altered, polished, improperly cleaned, or doctored in some way to make them appear to be full "red" Lincoln pennies. Rosenfield subsequently had 61 coins professionally evaluated. The professional grading service determined that 46 of the 61 coins were ungradable because they had "questionable color." Rosenfield sent a selection of 15 of these ungradable coins to another professional grading service for a second opinion—all 15 were found to have been "improperly

cleaned" or to have "altered color."

The complaint does not explicitly state it, but we find it reasonable to infer that it requires some expertise to distinguish the features of an authentic, uncirculated "red" or "RD" or "gem red" Lincoln penny in its original condition from one with "questionable color" that has been altered or improperly cleaned to make it appear to the lay person that it is a full "red" Lincoln penny. Rosenfield had no duty, as a matter of law, to obtain an expert evaluation of the coins' authenticity or value; whether he should have done so at an earlier date is an issue for a jury to decide. *See Pickett*, 60 F. Supp. 2d at 455. Viewing the facts alleged in the complaint and the inferences drawn therefrom in the light most favorable to the nonmoving plaintiff, we are unable to conclude that the delay in Rosenfield's discovery of the true nature and condition of the coins at issue was unreasonable as a matter of law.

Accordingly, we decline to dismiss Counts I and II of the complaint, asserting state law tort claims for negligent misrepresentation and fraud, on statute of limitations grounds.

## B. Economic Loss Doctrine

The defendants contend that all three counts of the complaint

should be dismissed pursuant to the economic loss doctrine, which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).

"When loss of the benefit of a bargain is the plaintiff's sole loss, . . . the undesirable consequences of affording a tort remedy in addition to a contract-based recovery [are] sufficient to outweigh the limited interest of the plaintiff in having relief beyond that provided by warranty claims." *King v. Hilton-Davis*, 855 F.2d 1047, 1051 (3d Cir. 1988). Therefore, "where a plaintiff's only alleged damage is a diminution in the value of a product plaintiff has purchased, Pennsylvania law says that plaintiff's redress comes from the law of contract, not the law of tort." *Ridolfi v. State Farm Mut. Auto. Ins. Co.*, 146 F. Supp. 3d 619, 625 (M.D. Pa. 2015) (internal quotation marks omitted).

"The economic loss doctrine is designed to maintain the separate spheres of the law of contract and tort." *Duquesne Light Co.*, 66 F.3d at 620 (cleaned up). "The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as result of a

breach of duties assumed only by agreement." *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1271 (M.D. Pa. 1990).

> [T]he need for a remedy in tort is reduced when the only injury is to the product itself and the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.' . . . [I]n such a situation[,] express and implied warranties under contract law are best suited to compensate for a loss in product value.

*Werwinski*, 286 F.3d at 671 (cleaned up). As Pennsylvania state courts have recognized, "contract theories such as breach of warranty are specifically aimed at and perfectly suited to providing complete redress in cases involving . . . economic losses." *REM Coal Co., Inc. v. Clark Equip. Co.*, 563 A.2d 128, 129 (Pa. Super. Ct. 1989). "To impose tort liability in addition would certainly erode the important distinctions between tort and contractual theories, including their differing objectives." *Id.* at 133.

The economic loss doctrine applies to transactions involving ordinary consumers, not just those between sophisticated commercial entities. *See Werwinski*, 286 F.3d at 673–74. It applies to common law negligent misrepresentation claims.[9] *See Duquesne Light Co.*, 66 F.3d at

---

[9] One recognized exception to the economic loss doctrine is the

619–20. It applies to intentional fraud claims. *See Werwinski*, 286 F.3d at 674–81. It applies to UTPCPL claims as well, at least in federal court.[10] *See Werwinski*, 286 F.3d at 681; *Ridolfi*, 146 F. Supp. 3d at 626–27; *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 530 (E.D. Pa. 2013); *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 559 (M.D. Pa. 2010). It applies even if the plaintiff has failed to plead an alternative contract

---

"business information/transaction" exception, which applies to negligent misrepresentation claims against professional defendants who are in the business of supplying information for the guidance of others. *See Palco Linings*, 755 F. Supp. at 1274; *see also Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 285–88 (Pa. 2005) (holding that the economic loss doctrine does not bar negligent misrepresentation claims sounding under Section 552 of the Restatement (Second) of Torts). The *Bilt-Rite* exception does not apply here because the defendants are "not in the business of supplying professional information for pecuniary gain," but rather, they are in the business of selling collectible coins. *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 491; *see also Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, ___ F. Supp. 3d ____, Civ. A. No. 16-727, 2019 WL 1227108, at *25 (W.D. Pa. Mar.15, 2019) ("The mere fact that a supplier of information stands to gain financially from a transaction in which it has a pecuniary interest is not enough to bring the negligent misrepresentation claim within the *Bilt-Rite* exception.").

[10] Although a number of Pennsylvania Superior Court decisions have questioned the application of the economic loss doctrine to UTPCPL claims and declined to follow *Werwinski* on this point, we are bound to follow *Werwinski* in the absence of a contradictory ruling by the Third Circuit or the Supreme Court of Pennsylvania. *See Doe v. Univ. of Pa.*, 270 F. Supp. 3d 799, 829 (E.D. Pa. 2017); *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 487–90 (E.D. Pa. 2016); *Ridolfi*, 146 F. Supp. 3d at 626; *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 558 (M.D. Pa. 2010).

or warranty cause of action, as is the case here.[11] *See Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Assocs., Inc.*, No. CIV. A. 00-CV-2231, 2002 WL 436742, at *2–*6 (E.D. Pa. Mar. 18, 2002) (applying the economic loss doctrine to a complaint asserting tort claims only); *cf. Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, ___ F. Supp. 3d ____, Civ. A. No. 16-727, 2019 WL 1227108, at *23 (W.D. Pa. Mar.15, 2019) ("[A]pplication of the economic loss doctrine to [a] negligent

---

[11] The plaintiff has attempted to distinguish *Werwinski* and related cases, arguing that *Werwinski* involved a sale of goods subject to express and implied warranties, and that the contracts of sale at issue here did not include any warranties. But it is well established under Pennsylvania law that there is a warranty of species in any sale of a particular type of item, as it is described. *See Whitaker v. Eastwick*, 75 Pa. 229, 231 (1874) ("There is an implied warranty of title and generally of species in a sale, but not of quality. Hence, where the vendor in the bill of parcels described the article as blue paint, it was held to be an implied warranty that it should be blue paint . . . ."); *Strawbridge v. Hawthorne*, 47 Pa. Super. 647, 650, 654 (1911) (finding an implied warranty of species where a customer sought to purchase raw linseed oil for veterinary purposes, but the vendor provided him with boiled linseed oil, which was not only different in species but poisonous as well); *Joseph v. Richardson*, 2 Pa. Super. 208, 216 (1896) ("All of the authorities agree that there is an implied warranty that the article delivered shall correspond in specie with the commodity sold, unless there are facts and circumstances to show that the purchaser took upon himself the task of determining not only the quality of the article but the kind he purchased."). Here, it is alleged that the parties specifically agreed to the sale of rare, high-end, uncirculated full "red" or "RD" Lincoln pennies—a description from which an implied warranty of species may arise.

misrepresentation claim does not depend on whether [plaintiff] is able to establish its breach of contract claim."); *Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, Civil Action No. 15-1020, 2016 WL 3198122, at *13 (W.D. Pa. June 9, 2016) ("Plaintiff's negligence claims are barred by the economic loss doctrine, which may apply whether or not a contract exists between the parties.").

"To avoid application of the economic loss doctrine, a plaintiff must articulate harm that is distinct from the disappointed expectations evolving solely from an agreement." *Doe v. Univ. of Pa.*, 270 F. Supp. 3d 799, 829 (E.D. Pa. 2017) (internal quotation marks omitted); *see also Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 337 (E.D. Pa. 2003) ("Claims arise independently of the underlying contract when they do not 'relate to the quality or characteristics of the goods sold.'") (quoting *Werwinski*, 286 F.3d at 676, 677, 678).

Here, Rosenfield purchased scores of Lincoln pennies from the defendants over the course of several years. He alleges that the defendants misrepresented—whether intentionally or negligently—the nature and condition of many of the coins sold to him. Rosenfield alleges that he relied on the sellers' representations in agreeing to purchase the

coins, paying nearly a quarter million dollars for these coins. But later, upon professional evaluation, Rosenfield alleges that he learned that 46 of the coins he had purchased were in fact worthless because—contrary to the defendants' express representations—these coins had been improperly cleaned or otherwise altered to make them falsely appear to be authentic "red" or "RD" or "gem red" Lincoln pennies. But Rosenfield's misrepresentation and fraud claims clearly and solely relate to the quality or characteristics of the coins he purchased from the defendants. Thus, these common law and statutory tort claims are barred by the economic loss doctrine. *Cf. Air Prods.*, 256 F. Supp. 2d at 337–40 (misrepresentation claim regarding a defendant's *own ability* to produce a product, rather than regarding the quality or characteristics of the product itself, was not barred by economic loss doctrine).

Accordingly, we will grant the defendants' motion for judgment on the pleadings with respect to dismissal of the plaintiff's state law tort claims for negligent misrepresentation, fraud, and unfair trade practices under the economic loss doctrine.[12]

---

[12] Having disposed of the plaintiff's common law and statutory tort claims on this basis, we do not reach the several alternative grounds for dismissal proposed by the defendants.

## C. Abuse of Process Counterclaim

The defendants have raised an abuse of process claim against the plaintiff, and their motion papers include a perfunctory request for judgment in their favor on this counterclaim. The defendants' briefs do not, however, address the substance of this claim at all, but merely include a bald request that judgment be entered in their favor and damages be awarded to them if the plaintiffs' claims are dismissed.

The defendants have neglected to present any affirmative arguments in support of their bare request for judgment on their abuse of process counterclaim. In particular, they have failed to identify any illegitimate use for which this civil action was initiated. *See generally Martin v. Finley*, 349 F. Supp. 3d 391, 417 (M.D. Pa. 2018) ("The tort of 'abuse of process' is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed.") (internal quotation marks omitted); *Bobrick Corp. v. Santana Prods., Inc.*, 698 F. Supp. 2d 479, 498 (M.D. Pa. 2010) ("[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or ulterior purpose of benefit to the defendant."). Viewing the facts presented in the pleadings and the

inferences drawn therefrom in the light most favorable to the nonmoving party, Rosenfield, the defendants have failed to meet their burden of demonstrating that there are no disputed material facts and that they are entitled to judgment as a matter of law with respect to their counterclaim.

Accordingly, we will deny the defendants' motion for judgment on the pleadings with respect to their counterclaim asserting a state law tort claim for abuse of process.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion for judgment on the pleadings (Doc. 16) will be granted in part and denied in part. All three counts of the complaint will be dismissed, with leave to amend to add any new contract or warranty claims that the facts may support.

An appropriate Order follows.

Dated: June 4, 2019                 *s/Joseph F. Saporito,  Jr.*
                                    JOSEPH F. SAPORITO, JR.
                                    United States Magistrate Judge